TUCKER *et al. v.* WIMPEY *et al.*

ATKINSON, J. This case, being an action of complaint for land to recover fractional lot number 261 in the 12th land district of Houston County, was before this court on a former occasion. *Tucker* v. *Wimpey,* 155 *Ga.* 118 (116 S. E. 315). The judgment of the trial court was then reversed, because the judge erred in rejecting an administrator's deed offered in evidence by the plaintiffs, and in granting a nonsuit. On a subsequent trial in the court below, the plaintiffs introduced the administrator's deed and other muniments of title showing a complete chain of title extending from the State to the plaintiffs. One of the muniments of title in the plaintiffs' chain was a deed from Daniel Adams to John G. White.

1. "Possession under a duly recorded deed will be construed to extend to all the contiguous property embraced therein." Civil Code (1910), § 4167. Applying this law it has been held: "Where a deed properly recorded conveyed five contiguous lots, describing them by their numbers and naming the aggregate quantity of land conveyed, the whole, although called in the deed 'five tracts or lots of land . . containing 202-1/2 acres each,' may be considered as one entire tract, the boundaries of which are the original lines on the margins of the tract as established by the State when the lots were laid off in the original survey. Possession under such a deed of a part of the land thus conveyed will embrace the whole tract described in the deed." *Johnson* v. *Simerly,* 90 *Ga.* 612 (16 S. E. 951) ; *Baxter* v. *Mattox,* 106 *Ga.* 344 (32 S. E. 94) ; *Durham Coal & Coke Co.* v. *Wingfield,* 142 *Ga.* 725 (83 S. E. 683) ; *Rowe* v. *Henderson Naval Stores Co.,* 143 *Ga.* 756 (85 S. E. 917). The request to review and overrule the foregoing decisions, in so far as they decide the principle quoted above, is denied.

2. The defendants, in support of their answer setting up title to the land by prescription based on seven years adverse possession under color of title, introduced: (1) a certified copy of a bond for title from James B. Moore to W. E. Wimpey, one of the defendants, which was executed May 26, 1911, and recorded June 11, 1911, more than seven years before commencement of the suit on February 25, 1921; (2) a deed from Moore to Wimpey, executed to comply with the bond for title, November 5, 1915, which was less than seven years before commencement of the suit. Other documentary evidence was introduced showing claims of title in defendants' predecessors prior to the date of the bond for title. The bond for title included the lot number 261 and other land, describing the property to which it referred as follows: "A certain tract or parcel of land situated, lying, and being in the County of Houston, State of Georgia, and being whole lots numbers 212, 249, 250, 251, 253, 252, 256, 257, 213, and containing two hundred, two and one half acres each, and aggregating 1822-1/2 acres. Also the following portions of lots, to wit: 181 acres of lot No. 254, 198 acres of lot No. 255, 160 acres of lot No. 261, 140 acres of lot No. 262, 25 acres of lot No. 263, 70 acres of lot No. 156; said fractions of lots containing seven hundred and seventy-four acres. All of said lots and fractions of lots lying and being in the original twelfth land district of Houston County, Georgia, except lot No. 156, which lies in the 11th land district of Houston

County, Georgia; and containing in the aggregate twenty-five hundred and ninety-six and one half acres, and having as its eastern boundary the Ocmulgee river." The deed made in pursuance of the bond for title described the property as indicated in the bond, with the additional recital: "It is warranted that said tract contains two thousand, five hundred and four (2504) acres, more or less. The tract also contains ninety-two and one half (92-1/2) acres above described, to which a quitclaim is given. The above-described land being known as the Durham Place." The muniments of title antecedent to the bond for title described the land by lot numbers corresponding to the numbers as stated in the bond for title stating that they were in the *eleventh district*, and added that the land was known as the "Durham Place." In connection with the several muniments of title a plat was introduced in evidence, which showed all of the whole lots and some of the fractional lots as being contiguous. The fractional lot number 261 was contiguous to whole lots, but not to other fractional lots shown on the plat. Three of the fractional lots mentioned in the bond for title were not shown on the plat, and there was no evidence that they were contiguous to the other lots. There was evidence that all of the land described in the bond for title had for many years been known as the Durham Place; also that the defendants and their predecessors had continuously since execution of the bond for title been in actual possession of unspecified different portions of the Durham Place by having tenants reside thereon and cultivate the land for agricultural purposes. As to two of the whole lots there was testimony that on one of them there had been a hunting lodge for a length of time that was not specified, and on another a tenant of the defendants had been living and cultivating fields for more than seven years. Neither of these lots was contiguous to the fractional lot number 261. The evidence as to possession did not show seven years continuous adverse possession by the defendants' predecessors prior to the bond for title. *Held*, that the defendants could not prescribe under the deed executed subsequently to the bond for title, because it was not executed seven years before institution of the suit.

3. The written bond for title and deeds relied on as color of title distinguish the whole lots from the fractional lots, and under application of the principle stated in note 1, supra, do not purport to refer to the fractional lots as forming with the whole lots one entire body of land, but purport to show that the whole lots were conveyed as one body and the fractional lots were conveyed separately.

4. The actual possession of parts of the whole lots would not, under such color of title, extend by construction to the fractional lots.

5. Concerning the fractional lot number 261, a witness testified that it "is known as a swamp lot, and no cultivation on it. This lot does not touch any land that is cultivated at the present time. It is in the extreme corner of the other lands shown on this plat, across to one side and on the river." Another witness testified: "I think there has been cultivation on lot 261, but not in recent years. . . There are no buildings on it." Another witness (Steve Lawson) testified: "Mr. John R. Wimberly first owned the Durham Place. . . The 'old nest egg' is on that lot [261]. . . This lot . . was a part of the Dur-

ham Place, and Mr. Wimberly was in possession of it along with the other lots of the Durham Place. That was 19 years before I left the Durham place first. . . One place on that lot indicated it was culti- vated years ago; when I come there they had quit working it. . . Mr. John R. Wimberly never cultivated that field or any other place on that lot that I knew anything about. The reason I thought Mr. Wim- berly claimed that lot was that he used it as a pasture, and when he wanted swamp timber we went on that lot and cut it. The lot was not fenced, but the cattle and hogs roamed on that lot. . . Mr. Wimberly said he claimed the lot. . . I never heard it called the White lot. . . I have heard the boiler [an old boiler at the 'nest egg'] referred to as the White boiler. It was a sawmill boiler; it is there now." One of the plaintiffs (George D. Tucker) testified: "I have been paying the taxes on the lot ever since I bought it. I have been on the land once or twice a year, . . getting axle and basket timber and fishing and hunting on it. . . When Mr. Warren Grice and myself went to see the witness Steve Lawson, and we were right close to the, crabapple field on the place talking to Steve Lawson, and he says, 'There is where Mr. White once cultivated,' and those ridges there showed it, and he said, 'There is where Mr. White had a sawmill to saw timber for his shop in Perry,' and the boiler was there, and I asked Steve if he didn't know that was called the White place, and he said, yes; and I asked him if he hadn't heard Mr. Walton and myself owned the place, and he said, yes, he heard some man at Byron owned the place. . . I never heard this lot of land referred to as a part of the Durham Place until this litigation started." Another witness (J. A. Walton, plaintiff) testified: "I was present the day the administrator of the Markert estate sold this particular lot of land [the deed shows the date to be November 6, 1894, prior to the bond for title, which was dated May 28, 1911]. Mr. Tucker bid on the land, and I took half interest in it. I talked with Mr. J. P. Cooper [one of the defendants, who acquired an interest from defendant W. E. Wimpey in 1918] about this lot of land that day, . . and he said the land was worthless; and I says, I have been offered 3 or 4 times what we gave for it. . . About 15 years ago . . Mr. Cooper asked me what I would take for that land." *Held:* (a) The evidence did not show such actual pos- session of any part of the fractional lot number 261 as would afford a basis for prescription. (b) Whether or not, under the principle stated in headnote 1, the bond for title and deeds relied on as color of title should be construed as conveying the whole lots and fractional lots as one entire tract, it was a question for the jury to decide whether the defendants were affected with such notice as would prevent the ripening of prescriptive title.

6. The evidence did not demand a finding setting up a title by prescrip- tion, and it was erroneous for the judge to direct a verdict for the defendants.      *Judgment reversed. All the Justices concur, except*

HILL and HINES, JJ., dissenting. We concur in the result reached by the court, but dissent from the rulings made in headnotes 3 and 4. The instruments referred to in headnote 3 conveyed one tract of land com- posed of the whole and fractional lots therein referred to as constituting

a single tract, and possession of one of them will constructively extend over the whole tract described in the instruments. *Durham Coal & Coke Co.* v. *Wingfield*, 142 *Ga.* 725; *Rowe* v. *Henderson Naval Stores Co.*, 143 *Ga.* 756.

No. 4048. SEPTEMBER 20, 1924.

Complaint for land. Before Judge Mathews. Houston superior court. October 2, 1923.

*Hall, Grice & Bloch* and *Marx Kunz,* for plaintiffs.

*Duncan & Nunn* and *Ryals & Anderson,* for defendants.